UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| REBEKAH O., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:21-CV-80-JVB |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

Plaintiff Rebekah O. seeks judicial review of the Social Security Commissioner's decision denying her applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency for an award of benefits or, in the alternative, for further administrative proceedings. For the reasons below, the Court grants Plaintiff's alternative request, reverses the Administrative Law Judge's decision, and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

In Plaintiff's February 23, 2016 and June 29, 2016 applications for benefits, she alleged that she became disabled on February 4, 2016. A hearing was held before an Administrative Law Judge (ALJ), who entered an unfavorable decision. Plaintiff appealed to the District Court for review. While the appeal was pending, Plaintiff filed a new application for benefits and was ultimately found to be disabled as of January 30, 2018.

The District Court remanded the 2016 applications with instructions for further proceedings. The Appeals Council sent the applications to an ALJ for a new hearing. That hearing was held on October 5, 2020. The ALJ issued her decision on October 29, 2020, and found that Plaintiff suffered from the severe impairments of degenerative/discogenic changes in the cervical

and lumbar spine, fibromyalgia, myofascial pain syndrome, chronic pain syndrome, obesity, generalized anxiety disorder, post-traumatic stress disorder, major depressive disorder, bipolar disorder, attention deficit hyperactivity disorder, and occipital neuralgia/headaches/post-concussion syndrome. (AR 1196). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform light work . . . except that she was never able to climb ladders, ropes, or scaffolds and she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She also needed to avoid unprotected heights, operating heavy or dangerous moving machinery, and operating motorized vehicles. She was further able to perform work requiring simple instructions and routine, repetitive tasks (defined as tasks and instructions that can be learned through short demonstration, up to and including one month, or in other words, SVP levels 1 or 2). She was also unable to perform work requiring a specific production rate, such as assembly-line work, but she could meet production requirements that allowed a flexible and goal-oriented pace. She could further perform work requiring only simple work-related decision-making, and she was able to maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. She could also respond appropriately to predictable, routine changes in the workplace.

(AR 1206). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was unable to perform her past relevant work but was able to perform the representative occupations of cleaner, sorter, and merchandise marker. (AR 1210-11). Accordingly, the ALJ found Plaintiff to be not disabled from February 4, 2016, through January 29, 2018. Plaintiff has appealed to this Court for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and

are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because it relied on vocational expert (VE) testimony that lacked a proper foundation or solid basis and because the ALJ erred in her pain analysis, credibility analysis, and approach to Plaintiff's daily activities. The Court disagrees with Plaintiff's first argument but agrees with the second.

### A. Vocational Expert Testimony

Plaintiff asserts that the VE did not provide a reasoned and reliable statement of the methodology used to move from the broader Standard Occupational Classification (SOC) categories to the narrower Dictionary of Occupational Titles (DOT) categories when determining the number of jobs available that a person with Plaintiff's RFC could perform.

Plaintiff's counsel asked the VE to explain the methodology he used to obtain the national estimates he provided for the jobs that he testified about. He explained:

> that's based upon observation of how these jobs are performed and random selection of those occupations as I see them. . . . [T]he methodology is simply utilizing occupational density. I use that to get a frequency at how often these occupations would appear in industry. . . . So I just multiply that by the [Occupational Employment Statistics (OES)] number or the SOC number and it gives me the frequency as to how often that job should appear in that particular industry."

(AR 1254-55). Plaintiff's counsel asked for an explanation of "the formula behind occupational density that gives the factor" by which the OES or SOC number is multiplied. (AR 1255). The VE responded, "I'm not going to explain that. Again, that is provided by the Census Bureau and how they methodize that. I trust the federal government in that area." *Id.* Plaintiff's counsel asked if the federal government provided a specific factor for each DOT title. The VE explained that it does not and that he looks at job density for the SOC and OES numbers and breaks them down to look at the jobs by their components and would only consider jobs that match the RFC provided to him. (AR 1255-56). He further testified that he looks state-by-state and industry-by-industry, trying to determine "the likelihood that this particular job will exist in that industry if the industry is still there." (AR 1256).

      "[T]he agency's regulations do not mandate a precise count of job numbers," though a VE must provide "evidence sufficient to provide some modicum of confidence in its reliability," which is required to meet the substantial evidence standard. *Chavez v. Berryhill* 895 962, 967-68, 969 (7th Cir. 2018). The Court is aware of cases from the Seventh Circuit Court of Appeals that cast doubt on the accuracy of statistics provided by vocational expert testimony. *See id.* at 969; *Alaura v. Colvin*, 797 F.3d 503, 507-08 (7th Cir. 2015). However, these cases do not counsel remand here.

      First, this is not a case where the expert assumed that the jobs in the economy in each SOC code are distributed equally among each DOT occupation classified under the SOC code, as was the case in *Chavez* and *Alaura*. Second, the expert testified that he looks specifically at industries and states and that he breaks down the larger SOC or OES numbers to find the jobs that match the

provided RFC. Plaintiff had no objection at all to this particular VE's qualifications and ability to testify as an expert. (AR 1247). Enough clarity was provided into the way the VE determined the number of jobs. This Court is unaware of any authority requiring a precise mathematical formula.

The VE descriptively, though not mathematically, explained how he derived his estimates of job numbers. This is sufficient to provide the necessary level of confidence in the reliability of his testimony and provides no basis for remand.

### B. ALJ's Analysis

Plaintiff argues that the ALJ improperly used her daily activities to find that her symptoms are not as severe as alleged. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

Though activities of daily living are considered in evaluating an applicant's symptoms, an ALJ must recognize the critical difference between activities of daily living and working full-time.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). An individual's "ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

The ALJ noted that Plaintiff was able to live alone and able to live with her adult daughter, had at least one friend, read for pleasure, stay in regular contact with family members, care for her personal needs independently (aside from getting reminders), take medications with reminders, prepare simple foods, do weekly craft projects at the library, drive, do some shopping, let her dog outside, feed her dog, count change, work on crossword puzzles and word searches, and go out alone. (AR 1208).

Regarding her physical impairments, Plaintiff's testimony (as reported by the ALJ) was that she sometimes tripped and fell, dropped things, had weak muscles and upper body pain, had difficulty getting out of bed half of the week, experienced dizziness, could sometimes not walk one block, would need to sit once during a 2-3 hour period of standing, could lift no more than a gallon of milk, had help with housework including laundry, used a cane, had difficulty looking down, squatting, bending, reaching, kneeling, climbing stairs, and completing tasks. (AR 1207). Plaintiff stated that repetitive activity made her pain worse. *Id.* The ALJ stated, generally, that Plaintiff's mother's statements of Plaintiff's abilities were similar to Plaintiff's statements. *Id.*

Regarding her mental impairments, Plaintiff's testimony (again, as reported by the ALJ), was that she misinterpreted what she was being told by managers and supervisors, was not fast enough at work, became overwhelmed by too much instruction, had rage problems, had trouble multitasking, had memory and concentration problems, had trouble being around a lot of people, forgot to pay bills, was unable to fill out a job application by herself, had difficulty completing tasks, understanding and following instructions, and handling stress and changes in routine. (AR

6

1200). The ALJ noted here, too, that Plaintiff's mother's statement generally corroborated Plaintiff's statements. *Id.*

Putting aside disputes about whether the ALJ was a faithful narrator in describing Plaintiff's activities and allegations of symptoms, the ALJ has failed to build a logical bridge from the evidence to her conclusion. Counting change, doing word puzzles, and a weekly trip to the library are not inconsistent, for example, with dizziness, needing to sit during a 2-3 hour period of standing, upper body pain, rage, and difficulty handling stress and changes in routine.

The Government asserts that "the relevance of this evidence was in its inconsistency with [Plaintiff's] allegations of disabling pain and mental limitations." (Resp. 8, ECF No. 26). The Government continues by arguing "[t]he ALJ acted appropriately in considering whether a person alleging an inability to leave home, get along with others, or engage in strenuous physical activities would likely choose to engage in the types of activities the ALJ cited." *Id.* The Government misstates the ALJ's finding as "an inability to leave home," where the decision reports that Plaintiff reported fear of leaving her house and of getting lost or forgetting where she was going. (AR 1200). Further, the Government does not clarify which of Plaintiff's activities are physically strenuous. Plaintiff's testimony regarding the library visits is that she goes to get books and that her mother takes her. (AR 54). Plaintiff testified that the library has weekly crafts, but she did not testify that she does the crafts. *Id.*

The Government further asserts that "[t]he ALJ's observations regarding [Plaintiff's] daily activities was hardly dispositive of [Plaintiff's] application for benefits." (Resp. 8, ECF No. 26). The Court is not so certain. The daily activities were the only aspect of the decision that the ALJ explicitly and specifically tied to Plaintiff's allegations of her symptoms, stating "the ability to

7

perform such daily activities does suggest that the claimant is not as limited as she and her mother alleged." (AR 1209); s*ee also generally* (AR 1207-10).

Furthermore, when looking at the evidence regarding whether Plaintiff needs a sit/stand option, it becomes clear that more analysis is needed. Plaintiff testified that she suffers from dizziness and at times trips over her own feet or does not fully pick her feet up when walking. (AR 48). She also testified that she has to sit after standing for long periods of time. She testified at her 2017 ALJ hearing that she would take extra bathroom breaks at her previous job just to have the opportunity to sit for a few minutes. (AR 49-50). She stated that in a three-hour period she would try to only take one such break, but it would sometimes be two. (AR 50). That equals sitting down approximately once per 60-90 minutes. Plaintiff also testified that at a job that required sitting, she would need to be able to get up and stretch. (AR 50).

The state agency consulting physicians did not find that Plaintiff needed a sit/stand option, but the state agency *examining* physician did. *Compare* (AR 74, 87, 102) *with* (AR 676). The ALJ found the examining physician's opinion deserving of significant weight except for the sit/stand option opinion, which the ALJ said was "not consistent with or supported by the evidence of record (detailed below)." (AR 1208). However, the ALJ never specifically identifies the evidence "detailed below" that she considered to be inconsistent with the sit/stand option. Perhaps she meant Plaintiff's daily activities, but they do not appear to be inconsistent with the need to sit or stand at will, as Plaintiff can schedule her daily activities around times that her body cooperates. The lack of surgical or emergency room treatment, which the ALJ discusses, is also not conclusive. The ALJ concedes that Plaintiff has obesity, back spasms, and occasionally slow or painful gait. The ALJ never fully grapples with the evidence regarding the opined-to need for a sit/stand option, and

8

the ALJ's belief that Plaintiff's daily activities show that she exaggerated her symptoms could have improperly tipped the scales.

The bridge that the ALJ has attempted to build is not a logical one, as the ALJ failed to explain any inconsistency between Plaintiff's daily activities and her alleged symptoms. This, in turn, may have been the deciding factor in the ALJ's decision to reject the sit/stand option that the examining physician believed Plaintiff to need. Therefore, the Court will remand this case to the agency. Because not all factual issues are resolved, the remand will be for further administrative proceedings.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's alternatively requested relief, **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on May 16, 2022.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT